# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| LEONDRE HARRIS,<br>Plaintiff, | Case No. 1:19-cv-383 |
| vs. | Black, J.<br>Litkovitz, M.J. |
| STATE OF OHIO, et al.,<br>Defendants. | **ORDER AND REPORT<br>AND RECOMMENDATION** |

Plaintiff, an inmate formerly at the Warren Correctional Institution (WCI) in Lebanon, Ohio,[1] brings this action under 42 U.S.C. § 1983. By separate Order issued this date, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v.*

---

[1] Plaintiff has submitted a notice of change of address informing the Court that he was transferred to the Lebanon Correctional Institution on May 29, 2019. (Doc. 2).

*Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a

factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Plaintiff's complaint with exhibits totals 140 pages and includes numerous claims against twenty-six defendants at WCI.[2] Plaintiff first claims that on February 7, 2019, a week after being placed in segregation, he complained to defendant assistant warden Gary Craft about a prior altercation plaintiff was involved in. (Doc. 1-2, Complaint at PageID 311). According to plaintiff, Craft told him that he was aware of plaintiff and the incident, but directed plaintiff to plead his case to the Rules Infraction Board (RIB). However, plaintiff claims that on February 14, 2009, Craft "changed the rule violation to assault" in an attempt to get his security status raised to a level four. (*Id.* at PageID 313). Plaintiff claims that defendant RIB chairman Garrison informed Craft that the rules violation ticket stated that plaintiff was the one assaulted in the incident. According to plaintiff, Craft told plaintiff "take this sanction and be thankful for the gift." (*Id.*). Plaintiff claims that he received "28 days RH and 90 days LPH." He appealed the decision, but claims that Craft denied all his appeals. He also claims that during an argument about Craft "being a racist and a piece of feces for his retaliatory acts" against plaintiff,

---

[2] Defendants are listed on PageID 307 and 310, with some individual defendants duplicated on both pages.

3

Craft told him he would "kick my ass." (*Id.*).

The complaint also includes various allegations regarding the conditions of plaintiff's confinement. Plaintiff claims the foundation in his cell was leaking water from rain and snow, the "ventilation wasn't functioning," and bugs were in his cell. (*Id.* at PageID 311). Plaintiff alleges that he began to write informal complaints about the cell and that shortly afterwards he began to regularly receive cold food, which he also submitted informal complaints about. Plaintiff further claims that he spoke to defendant captain Mitchell Turner, informing him that food is supposed to be served at 140 degrees, per policy. However, he claims that Turner told him that they do not follow policy. (*Id.* at PageID 312). According to plaintiff, he continued to write up issues he was having, but they were ignored.

Plaintiff next claims that defendants institutional inspector David Agee and sergeant J. Gault placed him on grievance restriction as a means of intimidating him. Agee informed plaintiff that if he wished to submit additional informal complaints plaintiff was required to write Agee a kite and that he or the warden would approve or disapprove it. Plaintiff also claims that Gault and defendant Garrison became angry with him because he feared for his safety and refused to return to general population. (*See id.* at PageID 313–14). Without further elaboration, plaintiff claims Gault retaliated against him by denying him phone calls to his attorney and family. Plaintiff further alleges that Agee denied him books and newspapers that were from approved vendors and that Garrison placed recreation sanctions on him. (*Id.* at PageID 314). According to plaintiff, defendant J.D. Johnson "refuse[d] to hold Garrison and Gault accountable for these acts of retaliation." (*Id.*). Plaintiff also claims that he wrote defendant D. Luneke to explain his frustrations.

The complaint lists other issues which plaintiff apparently complained about through

4

kites, including shower water temperature, hair care services, cold food, and cell conditions. Plaintiff claims he wrote defendants warden Jackson, Aramark, M. Vance, and R. Welch, but they did not take any corrective action. Later in the complaint plaintiff also complains that defendant Evalis L.O.R. failed to respond to any of his kites and defendant head of food services Lt. Jones never returned his kites or otherwise corrected the food temperatures. (*Id.* at PageID 318). Plaintiff also alleges that defendant head of maintenance Skip Miller took no responsibility for the prison conditions. (*Id.*).

On April 19, 2019, plaintiff claims that he slipped in the shower and injured his thumb. Plaintiff claims that he received an x-ray that day and was charged $3.00, but he was not provided with any pain medication. (*Id.* at PageID 315). Plaintiff claims that his thumb was twice the size of his other thumb and resulted in excruciating pain. According to plaintiff, he wrote a kite to the head of medical, defendant Jean Smith, but she did not get back to him for a week and still refused to give him anything for his pain. Plaintiff further claims that defendant nurse Bah also refused to give him ibuprofen. (*Id.* at PageID 316). He claims he still experiences pain every day and has not been permitted to see a doctor to get his thumb fixed. (*Id.* at PageID 315).

Plaintiff next claims that while he was getting x-rays, C/O Bollinger[3] gave his lunch tray to plaintiff's cellmate. (*Id.* at PageID 316). Plaintiff claims he wrote a complaint regarding the incident. According to plaintiff, defendant lieutenant Kendrick was supposed to call for his lunch tray but did not.

Plaintiff complains that the librarian defendant Harry Burchell denied him access to the

---

[3] C/O Bollinger is not named as a defendant to this action. (*See id.* at PageID 307, 310).

5

courts. (*Id.*). Specifically, plaintiff claims that Burchell told him the computers were broken for two weeks and then that the printer was broken the following week. According to plaintiff, Burchell subsequently denied him access to legal books. Plaintiff also claims that Craft denied him access to the courts by restricting outgoing mail. (*Id.* at PageID 317).

Next, plaintiff alleges that defendant C/O Johnson made derogatory comments about Muslims and refused to tell him the time so he could perform obligatory prayer. Plaintiff further claims that Johnson turned off the light while he was reading the Quran and asked him to "show me your ass & I will give you some chewing tobacco." (*Id.*). According to plaintiff, defendant chaplain Kehr refused to provide him books out of the Islamic book cabinet while providing Christian materials weekly. (*Id.* at PageID 318).

For relief, plaintiff seeks monetary damages. (*Id.* at PageID 312).

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff may proceed with his denial of medical care claims against defendants Jean Smith and Nurse Bah. For the reasons stated below, plaintiff's unrelated First Amendment claim against defendant Chaplain Kehr should be dismissed without prejudice. Plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

First, the complaint against the State of Ohio must be dismissed because the State of Ohio is immune from suit in this federal court. Absent an express waiver, the Eleventh Amendment to the United States Constitution bars suit against a State or one of its agencies or departments in federal court regardless of the nature of the relief sought. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996); *Pennhurst State School v. Halderman*, 465 U.S. 89, 100 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Edelman v. Jordan,* 415 U.S. 651, 663 (1974).

The exceptions to the Eleventh Amendment bar prohibiting lawsuits against a state in federal court do not apply in this case. The State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment rights. *See Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir. 1982); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 681 (6th Cir. 1976). Nor has plaintiff sued a state official seeking prospective injunctive relief against future constitutional violations. *Ex Parte Young*, 209 U.S. 123 (1908). In addition, Congress has not "explicitly and by clear language" expressed its intent to "abrogate the Eleventh Amendment immunity of the States" when enacting Section 1983. *See Quern v. Jordan,* 440 U.S. 332, 341-43, 345 (1979). Therefore, the State of Ohio is immune from suit in this case and plaintiff's complaint should be dismissed.

Plaintiff also fails to state a claim against the Warren Correctional Institution. Title 42 U.S.C. § 1983 provides that "[e]very person who, under the color of any statute . . . subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ," 42 U.S.C. § 1983. A correctional facility is not a "person" subject to suit under 42 U.S.C. § 1983. *See Parker v. Michigan Dept. of Corrections,* 65 F. App'x. 922, 923 (6th Cir. 2003) (Department of Corrections not a "person" under § 1983). Accordingly, plaintiff's claims against the WCI should be dismissed.

Plaintiff's claims in connection with the RIB hearings, appeals, and his allegations that defendant Craft attempted to file false charges against him should also be dismissed. Plaintiff fails to state a viable constitutional claim under the Fourteenth Amendment in connection with the RIB hearing, because the challenged disciplinary actions did not amount to a deprivation of a constitutionally protected liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the

7

Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002). The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process"). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

Here, plaintiff has not alleged that the challenged disciplinary proceedings resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. Moreover, plaintiff has not alleged any facts to suggest that he was subjected to a lengthy disciplinary placement amounting to an atypical or significant hardship that would

8

trigger constitutional concerns. Accordingly, because plaintiff does not have a protected liberty interest under the circumstances alleged herein, any claim against the defendant for their conduct in the disciplinary proceedings fails to state a cognizable federal claim under the Fourteenth Amendment's Due Process Clause.

Plaintiff has also not stated a constitutional claim to the extent he has alleged that Craft or any other defendant wrote false conduct reports which resulted in disciplinary sanctions imposed by the RIB. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Reeves, supra*, 2012 WL 275166, at *2 (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). However, as noted above, plaintiff's allegations are insufficient to trigger constitutional concerns because he has not alleged any facts even remotely suggesting that the challenged disciplinary action deprived him of a protected liberty interest.

The complaint should also be dismissed as to defendants Agee, Gault, and Garrison. First, to the extent that plaintiff complains that he was placed on grievance restriction, he fails to state a claim upon which relief may be granted. "Courts in this circuit have consistently upheld procedures which modify or restrict the ability of prisoners (who have been deemed abusive grievance filers) to file unfettered grievances." *Odom v. Helton*, No. CIV.A. 12-80, 2013 WL 4012889, at *7 (E.D. Ky. Aug. 6, 2013) (citing *Hartsfield v. Mayer*, No. 95-1411, 76 F.3d 378

(table), 1996 WL 43541, at *2 (6th Cir. Feb. 1, 1996) (unpublished order)). Furthermore, "[t]he Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim." *Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401, at *5 (W.D. Mich. May 6, 2015) (citing *Jackson v. Madery*, 158 F. App'x. 656, 660 (6th Cir. 2005)); *Walker v. Michigan Dep't of Corr.*, 128 F. App'x. 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x. 469, 471 (6th Cir. 2001); *Corsetti v. McGinnis*, 24 F. App'x. 238, 241 (6th Cir. 2001)). The right to file institutional grievances without being subject to retaliation extends only to the filing of non-frivolous grievances and "an ordinary person of reasonable firmness would not be deterred from filing non-frivolous grievances merely because he or she had been placed on modified status." *Walker*, 128 F. App'x. at 445-46. *See also Moore v. Sergent*, 22 F. App'x 472 at *474 (6th Cir. 2001) (upholding a pre-screening process for grievances, noting that "[a]s [the plaintiff] has not been prevented from continuing to file grievances, he has not been subjected to retaliation"). Accordingly, plaintiff's claim that Agee, Gault, or any other defendant placed him on grievance restriction is insufficient to state a claim upon which relief may be granted and should be dismissed.

Plaintiff's claim that defendants retaliated against him for refusing to return to general population should also be dismissed. A prisoner's claim of retaliation for engaging in protected conduct is grounded in the First Amendment. *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc)). A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that "'would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct'"; and (3) the prisoner's protected conduct, at least in part,

motivated the adverse action. *Id.* (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), in turn quoting *Thaddeus-X*, 175 F.3d at 394).

In this case, plaintiff's allegations are insufficient to demonstrate that the alleged retaliatory acts were in response to protected conduct under the First Amendment. Plaintiff's sole allegation in this regard is that he was retaliated against because he refused to return to general population. However, a prisoner does not have a constitutional right to choose where he is housed. *Cf. Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) ("a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification").

Furthermore, plaintiff has provided only conclusory allegations regarding his claims that he was subjected to sanctions and denied phone calls and reading materials. Plaintiff has not alleged what sanctions he was subjected to, nor has he provided any factual allegations regarding when the alleged retaliatory conduct occurred, the frequency/duration of the alleged conduct, or any other allegations to plausibly suggest that defendants' actions were motivated by protected conduct or would deter a person of ordinary firmness. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). "[N]ot every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) (citing *Benson v. Cady,* 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely the

11

ultimate fact of retaliation is insufficient")). Without any "further factual enhancement" plaintiff's conclusory allegations are simply insufficient to state an actionable claim for relief. *Twombly*, 550 at 555–57. *See also Whiteside v. Collins,* No. Civ.A. 2:08-cv-875, 2009 WL 4281443, at *9 (S.D. Ohio Nov. 24, 2009) (finding the plaintiff's retaliation claim was subject to dismissal, noting that "conclusory allegations of retaliatory motive and temporal proximity alone are insufficient to establish his retaliation claim") (Report and Recommendation), *adopted*, 2010 WL 1032424 (S.D. Ohio Mar. 17, 2010). Accordingly, defendants Agee, Gault, and Garrison should be dismissed as defendants to this action.

To the extent that plaintiff may seek to hold defendants Craft, C/O Johnson,[4] C/O Kriss,[5] or any other defendant liable for the use of threats, racial slurs, or other insults he has failed to state a viable claim under § 1983, which requires a showing of a deprivation of "a right secured by the United States Constitution or a federal statute." *See Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003). As noted above, plaintiff claims that Craft threatened him and that C/O Johnson made derogatory comments about Muslims. However, it is well-settled that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Chilcott v. Erie Cnty. Domestic Relations*, 283 F. App'x 8, 11 (3rd Cir. 2008) (and Sixth, Fifth and Tenth Circuit cases cited therein). Additionally, while prison officials

---

[4] Plaintiff's allegations that Johnson declined to inform plaintiff of the time and turned off his lights while he was reading the Quran are also subject to dismissal. The Court cannot discern any way in which plaintiff's conclusory allegations rise to the level of a violation of his constitutional rights.

[5] The sole allegation in the complaint against Kriss is that he opened plaintiff's cell and said "try something. I dare you." (*Id.* at PageID 318).

should not use degrading or racist language when interacting with inmates, the use of such language does not rise to the level of a constitutional violation. *See Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *4 (6th Cir. Mar. 31, 2017). A prison official's use of racial slurs, "although unprofessional and reprehensible, does not rise to the level of constitutional magnitude" and is insufficient to support a constitutional claim for relief. *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (citing *Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir. 1985)); *see also Ivey*, 832 F.2d at 954. *Cf. Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545-46 (6th Cir. 2004). Accordingly, these claims should be dismissed.

Plaintiff's claims regarding the conditions of his confinement are subject to dismissal at the screening stage. As detailed above, plaintiff makes numerous allegations in the complaint regarding the shower water temperature, hair care services, cold food, and cell conditions. The Eighth Amendment requires prison officials "to provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care. . . ." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles,* 450 F. App'x 448, 455–56 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). Therefore, to establish an Eighth Amendment violation, a plaintiff must first demonstrate objectively the unique deprivation of "the minimal civilized measure of life's necessities." *Id.* at 454 (quoting *Rhodes,* 452 U.S. at 347); *see also Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir.

2000) (citing *Farmer,* 511 U.S. at 834) ("[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."). He then must subjectively show the defendant acted "wantonly," with "deliberate indifference to the plaintiff's serious needs." *Richmond,* 450 F. App'x at 455 (citing *Farmer,* 511 U.S. at 834).

In this case, plaintiff's allegations do not rise to the level of an Eighth Amendment violation. Plaintiff's conclusory allegations that his cell was generally filthy, the ventilation was not properly functioning, bugs were in his cell, and his other allegations regarding his conditions of confinement do not amount to a deprivation of "the minimal civilized measure of life's necessities." (*See* Doc. 1-2, Complaint at PageID 311). Moreover, as to plaintiff's claim that he was served cold food[6] or that his lunch tray was given to his cellmate on one occasion, the discomfort experienced by a prisoner when some meals are denied over a short period of time does not rise to the level of "wanton infliction of pain" so long as the prisoner continues to receive adequate nutrition. *Richmond,* 450 F. App'x at 456. *Cunningham v. Jones,* 667 F.2d 565, 566 (6th Cir. 1982) (serving a prisoner one meal per day for fifteen days did not violate the prisoner's Eighth Amendment rights where that meal was sufficient to maintain normal health for the 15–day time period). *See, e.g., Wilson v. Johnson,* 385 F. App'x 319, 320 (4th Cir. 2010) (finding that the plaintiff stated a cognizable Eighth Amendment claim regarding inadequate nutrition when he asserted that he lost twelve pounds in a month because of inadequate portions). Plaintiff has neither alleged that he was denied adequate nutrition, nor has he alleged any harm as a result of the allegations in the complaint. *See, e.g., Price v. Jones,*

---

[6] Plaintiff has also failed to state a retaliation claim in connection with his being served cold food. Although plaintiff alleges that he started receiving cold meals shortly after writing informal complaints, plaintiff has not alleged that any named defendant was aware of the informal complaints predating the cold meals, were motivated by his protected conduct, or actually served him cold food.

Case No. 1:12-cv-360, 2012 WL 1854299, at *4 (S.D. Ohio May 4, 2012) (Report and Recommendation) (Dlott, J.; Litkovitz, M.J.) (recommending dismissal of Eighth Amendment claim based on the plaintiff's failure to allege that his health suffered as a result of alleged inadequacies in the prison meal plan), *adopted* 2012 WL 2269265, at *1 (S.D. Ohio June 18, 2012); *White v. Gregory,* 1 F.3d 267, 269 (4th Cir. 1993) (finding the allegation that the plaintiff was forced to go without food for eighteen hours on the weekends failed to rise to a violation of the Eighth Amendment without any showing of deleterious effects of the meal plan). Accordingly, plaintiff's claims concerning his conditions of confinement should be dismissed.

To the extent that plaintiff seeks to hold defendant Turner liable for Turner's failure to comply with ODRC policy regarding food temperature, plaintiff has also failed to state a claim upon which relief may be granted. An alleged failure to comply with prison policy does not itself rise to the level of a constitutional violation. *See Laney v. Farley,* 501 F.3d 577, 581 n.2 (6th Cir. 2007) ("Allegations of state law or state constitutional violations will not support a § 1983 claim."); *Smith v. Freland,* 954 F.2d 343, 347–48 (6th Cir. 1992) (violation of municipal policy does not create liability under § 1983); *McVeigh v. Bartlett,* No. 94–2347, 1995 WL 236687 (6th Cir. Apr.21, 1995) ("failure to comply with a prison policy . . . does not rise to the level of a constitutional violation because the policy directive simply does not create a protectable liberty interest."). Accordingly, Turner should be dismissed as a defendant to this action.

Plaintiff's allegations that defendants J.D. Johnson, D. Luneke, Jackson, Aramark, M. Vance, Evalis, Lt. Jones, Kendrick, or Skip Miller failed to respond to his kites and/or grievances or failed to conduct investigations of his complaints are also subject to dismissal at the screening

15

stage. As noted above, plaintiff claims that these defendants failed to investigate and/or respond to his grievances or kites. However, "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011). Furthermore, to the extent that plaintiff claims that the grievance procedure failed to produce the correct outcome, this cannot give rise to a § 1983 claim because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug. 03, 1998) (citations omitted). Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson,* 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

The complaint also fails to state a claim for relief for a denial of access to the courts under the First Amendment. Plaintiff complains that the defendants Burchell and Craft denied him access to the courts by restricting outgoing mail and denying him access to legal materials and the printer. However, an inmate must plead and demonstrate that the lack of legal materials or the shortcomings in the prison legal assistance program have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to

file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). In addition, when bringing a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he predicate claim (must) be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* In other words, "only prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action." *Hadix v. Johnson*, 182 F.3d 400, 405-406 (6th Cir. 1999) (citing *Lewis*, 518 U.S. at 353 & n. 3).

Plaintiff fails to allege any facts showing that he suffered an actual injury in any nonfrivolous legal proceeding as a result of the alleged inadequacies of the law library facilities at WCI or due to mail restrictions. Plaintiff's allegation that defendants' actions "held up the process of my court proceedings" is not sufficient to state a claim. Plaintiff has not alleged that he was in fact prevented from pursuing his court proceedings nor has he alleged any facts to suggest that any defendant's conduct impacted a nonfrivolous cause of action. Without such allegations, plaintiff fails to state a claim for relief for a denial of access to the courts under the First Amendment.

Finally, plaintiff's claim that defendant chaplain Kehr refused to provide him with religious materials while regularly providing other inmates with Christian materials should be dismissed without prejudice. A plaintiff may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the

action." Fed. R. Civ. P. 20(a)(2). *See also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."). In this case, plaintiff's medical care claims against defendants Smith and Bah are entirely unrelated to his claims against Kehr, which arises out of a separate occurrence and involves distinct questions of law and fact. Should plaintiff wish to seek relief on this claim in this Court he must file a separate action and seek leave to proceed in forma pauperis or pay the filing fee required to commence a civil action. *See* Fed. R. Civ. P. 21. Accordingly, plaintiff's unrelated claim against Kehr should be severed and dismissed without prejudice. *See Cage v. Mich.*, No. 16-cv-11679, 2018 WL 3729062, at *2 (E.D. Mich. Aug. 6, 2018) ("[T]he proper remedy for . . . misjoinder is to sever the claims against the unrelated parties and dismiss those claims without prejudice.").

Accordingly, in sum, plaintiff may proceed with his claims against defendants Jean Smith and Nurse Bah. However, plaintiff has failed to provide summons and U.S. Marshal forms for service on these defendants. It is therefore **ORDERED** that plaintiff, **within thirty (30) days** of the date of this Order, submit a completed summons and U.S. Marshal form for service on defendants Jean Smith and Nurse Bah. Once the Court receives the requested summons and United States Marshal forms, the Court will order service of process by the United States Marshal.

For the reasons stated above, plaintiff's unrelated claim against defendant Kehr should be

**SEVERED** and **DISMISSED without prejudice** pursuant to Fed. R. Civ. P. 21. Plaintiff's claims against the remaining defendants should be **DISMISSED**. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's unrelated claim against defendant Kehr be **SEVERED** and **DISMISSED without prejudice** pursuant to Fed. R. Civ. P. 21.

2. The complaint be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), with the exception of plaintiff's claims against defendants Jean Smith and Nurse Bah.

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

## IT IS THEREFORE ORDERED THAT:

Plaintiff, **within thirty (30) days** of the date of this Order, submit a completed summons and U.S. Marshal form for service on defendants Jean Smith and Nurse Bah. Once the Court receives the requested summons and United States Marshal forms, the Court will order service of process by the United States Marshal.

Date: 6/12/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

LEONDRE HARRIS,
    Plaintiff,

vs.

STATE OF OHIO, et al.,
    Defendants.

Case No. 1:19-cv-383

Black, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).